UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAMELA D. McKINNEY,                    )
                                        )
            Plaintiff,                  )        No. 12 C 00220
                                        )
      v.                                )
                                        )        Judge Edmond E. Chang
JEH JOHNSON, Secretary, United States   )
Department of Homeland Security,        )
                                        )
            Defendant.                  )

## MEMORANDUM OPINION AND ORDER

Pamela D. McKinney worked for the Federal Emergency Management Agency (FEMA) until March 2007, when she was fired. After she was fired, McKinney brought suit against Jeh Johnson[1], Secretary of the United States Department of Homeland Security, alleging that she was fired in retaliation for complaints she made about discrimination in her workplace, in violation of Title VII of the Civil Rights Act of 1964.[2] R. 13, Am. Compl. Specifically, McKinney claimed that because of her age, sex and race, she was being paid less than two of her co-workers, despite performing the same work, and that she was fired in retaliation for having complained about that discrimination to FEMA's Office of Equal Rights. *Id.* at 3.

---

[1]Originally, McKinney brought suit against Janet Napolitano, who was Secretary of the Department of Homeland Security at the time McKinney filed suit in January 2012. R. 1, Compl. In December 2013, Jeh Johnson was sworn in as the new Secretary. R. 78 at 1 n.1. He then became the Defendant in this case. *See* Fed. R. Civ. P. 25(d).

[2]McKinney also alleged that she was discriminated against on the basis of her age, sex, and race in violation of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964. R. 13, Am. Compl. The previously assigned district judge granted summary judgment in favor of Defendant on those claims. R. 85.

On June 19, 2015, after a four-day trial, the jury returned a verdict for the government. Minute Entry (June 19, 2015). The Court entered judgment that same day. R. 191, Judgment. McKinney now moves for a new trial under Federal Rule of Civil Procedure 59. R. 211, Pl.'s New Trial Mot. McKinney argues that she is entitled to a new trial for three reasons: (1) Juror Diane Burrell improperly concealed her bias in favor of the defendant, (2) Trial Witness David Skarosi gave false testimony, and (3) Anthony Pinelli, one of McKinney's attorneys, had a conflict of interest that adversely affected his trial performance and tainted the verdict. *Id.* For the reasons explained below, McKinney's motion is denied.

## I. Legal Standard

McKinney moves for a new trial under Federal Rule of Civil Procedure 59, which can only be granted "if the jury's 'verdict is against the manifest weight of the evidence, … or if for other reasons the trial was not fair to the moving party.'" *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (quoting *Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011)). Although the new-trial standard is difficult to satisfy, it is not impossible: a new trial may be granted if "no rational jury" could have rendered the verdict, *Moore ex rel. Estate of Grad v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008), or if an attorney's misconduct prejudiced the moving party, *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir. 1983).

## II. Analysis

## A. Concealed Juror Bias

McKinney first argues that she is entitled to a new trial because one juror, Diane Burrell, allegedly failed to answer honestly one or more questions during *voir dire*, which concealed Burrell's bias in favor of Defendant, and which, if disclosed, would have led to Burrell's dismissal for cause. Pl.'s New Trial Mot. at 7. McKinney contends that Burrell "selectively hid" a "key aspect" of her employment: that she was an "HR specialist" with the Social Security Administration. *Id.* at 8. To support her allegation, McKinney relies on (1) a "Linked-in" page she obtained off the internet, which identifies Burrell as a "Human Resource Professional," R. 226, Exh. O, Burrell Linked-in Page; (2) a private website that publishes federal employees' salaries, which identifies Burrell as being in "human resources management," R. 224, Exh. B, OPM Email to McKinney (Oct. 6, 2015) (website identified as www.fedsdatacenter.com); and (3) an email from a FOIA officer with the Office of Personnel Management (OPM), which identifies Burrell as a "human resources specialist" and as part of "human resources management," *id.*, Exh. A, OPM Email to McKinney (Sept. 8, 2015). McKinney argues that had Burrell disclosed the fact that she was a human resources specialist, it would have exposed Burrell's potential "institutional bias in favor of the defense." Pl.'s New Trial Mot. at 10.

Contrary to McKinney's contention, Burrell did not hide her employment or her duties with the Social Security Administration (SSA) during *voir dire*. When asked to describe her employment, Burrell stated that "[f]or the past 30 years[,]

[she] worked for the Social Security Administration." R. 220, Trial Tr. Excerpt at 3:9-10. She explained that she was "the training director," that she "managed the employee training and development section," and that she was "responsible for all of [SSA's] training for all technical positions and for management training." *Id.* at 3:12-15. Burrell's Linked-in page does not come close to contradicting what Burrell said, nor does the private website or email from OPM McKinney cites. There is nothing odd about employee training positions being housed in an agency's human resources department. On the SSA's website, for example, one of the described functions of human resources is "employee training." SSA Website, http://www.ssa.gov/careers/hr.html (last visited Feb. 12, 2016). Burrell described her job duties; it does not matter that she did not specify what particular department her position fell in. There was no dishonesty.

In addition, the fact that Burrell may have worked in the Social Security Administration's human resources department does not show that she had "the routine authority to hire and fire federal agency personnel in her HR role," as McKinney suggests. Pl.'s New Trial Mot. at 8. McKinney argues that as a "higher up within HR," Burrell would have "performed analogous or related functions" to those performed by Liz Barentzen (the FEMA Employee Relations Specialist involved in McKinney's firing); and that, if employed by FEMA, Burrell "would have worked with Barentzen on [McKinney's] termination." R. 224, Pl.'s Reply Br. at 12-13. This similarity in role, McKinney argues, gave Burrell a pro-defense bias and made Burrell sympathetic to Barentzen. Again, however, McKinney has no evidence

to support her allegations. Outside of the Linked-in page, the OPM email, and the one private website—none of which show Burrell had the "routine authority" to fire employees—McKinney does not offer other evidence. The mere fact that Burrell may have worked in the human resources department does not, on its own, establish that Burrell had the general authority to hire and fire employees. It also does not show that Burrell's role within the Social Security Administration was the equivalent of Barentzen's within FEMA.

And in fact, Burrell's responses during *voir dire* actually suggest that Burrell did *not* have the "routine authority" to fire individuals in the most recent job position that she held at the SSA. During *voir dire*, the Court asked all potential jurors whether they had *ever*—without a time limitation—terminated an employee or been in a position to do so. R. 182, Minute Entry (June 12, 2015), Exh. 2 (Voir Dire Question 4: "Have you ever been in a supervisory job position with the authority to fire an employee or to set the salary or the pay of an employee?"). Burrell raised her hand in response and stated that she had held such a position within the federal government. In the sidebar that followed, Burrell explained that more than 20 years ago, during her time as "a supervisor" in one of the Social Security Administration's "field office[s]," she had to let an employee go due to "work performance" issues. R. 220, Trial Tr. Excerpt at 13:23, 14:6-14. Burrell did not hide the fact that she had been in a position to fire someone some two decades ago, nor did she hide the fact that she had in fact fired someone in the past. So there

is no plausible inference that Burrell more recently had the routine authority to fire employees.

McKinney separately argues that Burrell also concealed from McKinney's lawyers and the Court that "the pending actions" against Burrell were against her "in her capacity as an embattled HR official, not merely a training employee." Pl.'s Br. at 13-14. Presumably, the "pending actions" McKinney is referring to are the EEO complaints Burrell brought up during one of the sidebars. Burrell explained that she had been named in her employment capacity with the SSA in three separate EEO complaints. R. 220, Trial Tr. Excerpt at 15:16-18 ("COURT: … [C]an you approximate how many times you have been named in EEO complaints? / [BURRELL]: Three times."). The first involved a complainant who alleged that he had been discriminated against on the basis of his race and gender. *Id.* at 16:7-8. Burrell explained that the last time an SSA in-house attorney contacted her regarding that case was in November (about seven months before the trial); she explained that she had been asked if she might be willing to testify, and that as far as she knew, the case remained pending before an Administrative Law Judge. *Id.* at 16:10-25. The second case involved a complainant who alleged he had been discriminated against on the basis of his race, *id.* at 18:6-11, and the third a complainant who alleged she had been discriminated against on the basis of her race and gender, *id.* at 19:23-25, 20:1-3. Burrell stated that neither of the last two cases made it past the investigative stage. *Id.* at 18:15-19, 20:5-8.

McKinney now argues that the fact that Burrell was represented by a governmental agency—the SSA—in those cases "instill[ed] [in Burrell] an actual pro-government bias," and "influence[d] Burrell's adjudication of [FEMA's] alleged retaliation [against McKinney]." Pl.'s New Trial Mot. at 14. According to McKinney, these facts "would have supported a challenge for cause." *Id.* There are two problems with this argument: first, McKinney did not make a for-cause challenge against Burrell during jury selection; and second, a for-cause challenge would have been rejected anyway. Of course the attorneys for *both* parties were there at the sidebar when Burrell explained these prior EEO charges. So, there is no question that McKinney's counsel, Anthony Pinelli and Susan Pavlow, knew about the EEO complaints before the lawyers made their for-cause and preemptory challenges following *voir dire*. During the sidebar, Pinelli and Pavlow were also given the chance to ask Burrell follow-up questions, and on one occasion chose to do so. *See* R. 220, Trial Tr. Excerpt at 17:9-13 ("COURT: Any follow-up questions on that one? … MS. PAVLOW: I do. … "). Had they wished to delve deeper into these EEO complaints during the sidebar, or to raise a for-cause challenge against Burrell following *voir dire*, they could have done so. They chose not to. R. 226-10, Exh. U, Jury Challenges at 8-9. McKinney is bound by her attorneys' decision *not* to raise a for cause challenge against Burrell. *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015) (citing *Link v. Wabash R.R.*, 370 U.S. 626 (1962)).

Aside from the forfeiture of the for-cause challenge, the Court would have rejected the challenge anyway. McKinney disagrees, asserting that "where, as here,

the record contains no assurances that … the prospective juror can exercise a judgment unclouded by [a particular] belief, the verdict cannot stand." Pl.'s New Trial Mot. at 12. But contrary to McKinney's assertion, the record in this case *does* contain such assurances. During *voir dire*, Burrell repeatedly stated that her prior EEO experiences would *not* impede her ability to be fair and impartial in this case. After Burrell described each EEO complaint, the Court specifically asked Burrell whether "[she would be] able to give a fair hearing to both sides in this case," and whether "[a]nything about [her] experience[s] … would prevent [her] from being fair in this case?" R. 220, Trial Tr. Excerpt at 17:1-5, 18:20-21, 20:14-16. Each time, Burrell credibly and unequivocally stated that nothing from those experiences would prevent her from being fair. *Id.* at 17:6, 18:22-23, 20:17-18. The Court did accept, and still does accept, those answers as true. Given that neither party challenged Burrell's *voir dire*, it would appear that counsel for both parties found her responses genuine as well. *United States v. Brodnicki*, 516 F.3d 570, 575 (7th Cir. 2008) (finding no error in district court's refusal to dismiss a juror for cause when the court received an affirmative response that the juror could be fair and impartial and there was no reason to believe otherwise); *Warfield v. City of Chicago*, 679 F. Supp. 2d 876, 883 (N.D. Ill. 2010). McKinney has fallen far short of proving that Burrell's assertions were anything but genuine.

Because McKinney has failed to show that Juror Diane Burrell provided false statements during *voir dire*, or that Burrell could not be fair and impartial, McKinney is not entitled to a new trial on this ground.

## B. False Testimony Provided by Witness David Skarosi

McKinney next argues that she is entitled to a new trial because the verdict was based on false testimony provided by Witness David Skarosi. Pl.'s New Trial Mot. at 21. When McKinney worked at FEMA, Skarosi was the Division Director of the Response and Recovery Unit for Region V, which is the region where McKinney worked. R. 225-1, Exh. F, Skarosi 2008 Dep. at 8:12-13[3]; R. 225-2, Exh. G, Skarosi 2013 Dep. at 6:16-21; R. 224-5, Exh. E, Admin. Hr'g Skarosi Test. at 332:3-4. Skarosi also supervised Larry Bailey, who was the Recovery Branch chief and McKinney's immediate supervisor at the time of McKinney's termination. Skarosi 2008 Dep. at 32:10-12, 42:1-3; Skarosi 2013 Dep. at 8:3-14, 34:12-20, 45:10-23. McKinney called Skarosi as an adverse witness in her case-in-chief. R. 201, Trial Tr. Excerpt (June 17, 2015 a.m. session); R. 202, Trial Tr. Excerpt (June 17, 2015 p.m. session).

McKinney argues that Skarosi lied during trial when he testified that he never told McKinney to withdraw her pending EEO complaint during a meeting attended by Skarosi, Bailey and McKinney on February 28, 2007. Pl.'s New Trial Mot. at 22. In support of her allegation, McKinney relies on (1) Skarosi's August 14, 2008 deposition, which Skarosi gave before McKinney's EEO administrative hearing, R. 225-1, Exh. F, Skarosi 2008 Dep.; (2) Skarosi's March 18, 2010 testimony, which Skarosi gave at the administrative hearing, R. 224-5, Exh. E, Skarosi Admin. Hr'g Test.; and (3) Skarosi's May 2013 deposition, which Skarosi gave during discovery for this case, R 225-2, Exh. G, Skarosi 2013 Dep. According to

---

[3]The citations to Skarosi's 2008 deposition are based on the PDF pagination.

McKinney, these three prior statements by Skarosi contradict his trial testimony and show that Skarosi did tell McKinney to withdraw her complaint. Pl.'s New Trial Mot. at 21; Pl.'s Reply Br. at 6.

Of course false testimony can be a ground for a new trial: "If a verdict is based on false testimony, [then a court] has the discretion under Rule 59 to grant the injured party a new trial." *Antevski v. Volkswagenwerk Aktiengesellschaft*, 4 F.3d 537, 540 (7th Cir. 1993). In this case, the problem for McKinney is that she has failed to show that Skarosi lied on the stand. None of Skarosi's prior statements contradict his trial testimony.

In Skarosi's 2008 deposition, he was initially asked whether he knew if McKinney had filed an EEO complaint at the time of the February 2007 meeting. Skarosi 2008 Dep. at 27. He stated that he did not know about the complaint (a position he consistently held in both depositions). *Id.* ("Q. During this meeting, do you know whether [McKinney] had already filed an EEO complaint? A. I didn't know if it was formal or informal. Didn't know if she had put anything in writing."); *see also* Skarosi 2013 Dep. at 28:7-13 (quoting a prior affidavit signed by Skarosi in which he said: "I was not aware of [McKinney's] complaints or concerns except that she had a problem with her initial pay grade when she was hired … and issues with Stacie Grathen."). Skarosi was then asked: "Did you suggest to [McKinney] that she can resolve the EEO complaint outside of the EEO process?" Skarosi 2008 Dep. at 27. Skarosi replied: "Yeah, I -- well, I wanted Larry [Bailey] to try to work these things, you know. I mean … some of this stuff can be solved … outside of the EEO

process or any other process … if you just sit down and talk and communicate with one another." *Id.* It is important to note, however, that Skarosi then went on to clarify that "[McKinney] always ha[d] [the] right to [contact the EEO office]," *id.* at 28, and to raise a discrimination complaint with the EEO office instead of her first-line supervisor, *id.* at 55-56 ("Q. Is there any problem with her going to the EEO office instead of her first-line supervisor … about a discrimination complaint? A. No, she has a right to do that."). So, although it is true that Skarosi suggested at his 2008 deposition that he told McKinney during the February meeting that he thought it would be better if they could try to work through any issues in-house, he never admitted that he told McKinney to withdraw her complaint—a complaint that, according to his testimony, he did not even know about. Skarosi's 2008 deposition does not contradict Skarosi's trial testimony.

Skarosi's March 2010 testimony at McKinney's EEO administrative hearing also is consistent with Skarosi's trial testimony. At the administrative hearing, Skarosi reiterated that he told McKinney and Bailey during the February meeting that "[he] expected … employees to … work through the supervisory chain, that if employees had issues, … it's best to try to resolve them at the lowest level." Skarosi Admin. Hr'g Test. at 329:21-24. He then went on to clarify (as he did before) that McKinney always had the right to go through the EEO. *Id.* at 334:24-335:1-9 ("Q. Did you suggest to her that you'd like to resolve the complaint internally instead of have her go through EEO? A. She had the right to go through EEO. … I guess what I was saying is if there are things that we could resolve, let's try to do that, but she

certainly had the right to go to EEO if she wanted to."). So here too, Skarosi merely said that he told McKinney and Bailey that he thought it best to try to work things out internally. He never conceded that he told McKinney to withdraw her EEO complaint.

In Skarosi's 2013 deposition, he likewise testified that "the point of the [February] meeting was for [him] to kind of reinforce with Pam and Larry about the supervisory chain of command." Skarosi 2013 Dep. at 25:18-21. During this deposition, however, Skarosi actually went on to explicitly state that he *never* told McKinney to withdraw her EEO complaint:

> Q. Now, prior to Ms. McKinney being terminated, at any time did you suggest or make a comment to Ms. McKinney that she should drop her EEO concerns and just deal with her issues with you and Mr. Bailey directly?

> A. Absolutely not. Every employee has the right to go [to] EEO.

*Id*. at 66:6-12. So, contrary to McKinney's contention, Skarosi's 2013 deposition actually is *consistent* with his trial testimony. Without any inconsistent statements on which to rely for this topic, it is no surprise that McKinney's trial counsel decided not to bring up any of Skarosi's prior statements, despite McKinney's desire to the contrary.[4]

---

[4]Defense counsel's decision to highlight Skarosi's trial testimony during closing arguments, and to emphasize the fact that Skarosi did not tell McKinney to withdraw her EEO complaint, is similarly insufficient to warrant a new trial. To warrant a new trial, statements made during closing arguments must be "plainly unwarranted and clearly injurious." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 730 (7th Cir. 1999). Here, defense counsel had every right to emphasize Skarosi's testimony; it was admissible trial testimony and, as discussed above, was not contradicted by Skarosi's prior deposition testimony or his testimony at the administrative hearing.

McKinney also points to the earlier summary judgment decisions [R. 85, decided by the previously assigned judge] to support her allegation that Skarosi lied at trial. Specifically, she points to the following statement: "On February 23, 2007, McKinney had a meeting with Bailey and David Skarosi … Skarosi told McKinney that 'issues could be resolved on his level' and that she should 'drop the complaint.'" R. 85, Summ. J. Ruling at 5. Sure, this statement can be found in the background section of the summary judgment opinion. But this "fact" statement in the opinion does not help McKinney. In evaluating a summary judgment motion, the Court is required to view the facts and draw all reasonable inferences *in the light most favorable to the non-moving party* (here, that was McKinney). *Scott v. Harris*, 550 U.S. 372, 378 (2007). So in this case, when the Court was evaluating the defense's summary judgment motion, the Court was required to credit McKinney's version of the facts. But crediting the non-movant's factual assertion for summary judgment purposes is *not* the same as making a finding that the assertion is true. Factual findings like that are not made during summary judgment. *Id.* ("As this case was decided on summary judgment, there have not yet been factual findings by a judge or jury … ."). The prior opinion does not establish that Skarosi lied at trial, nor does it save McKinney's motion.

What's more, even if Skarosi's prior testimony was sufficiently inconsistent to be admissible as a prior inconsistent statement, the fact that this evidence was not offered at trial still would not entitle McKinney to a new trial. Presumably, McKinney's attorneys made a strategic choice in not trying to admit this evidence.

McKinney might not have liked that choice, but she is nevertheless bound by it. As the Seventh Circuit has said: "[L]itigants are bound by the acts and omissions of their chosen agents, including their lawyers." *Choice Hotels Int'l, Inc.*, 792 F.3d at 754 (citing *Link v. Wabash R.R.*, 370 U.S. 626 (1962)). If an attorney "bungl[es]" a case, or if a client is "aggrieved by counsel's inept handling of a suit," as McKinney seems to be here, then the proper "remedy is malpractice litigation against the wrongdoer, not more litigation against an innocent adversary in the original litigation." *Id.* (Of course, the Court is not at all suggesting that any malpractice occurred.)

Without sufficient evidence to show that Skarosi provided false testimony, or committed perjury on the stand, McKinney is not entitled to a new trial based on Skarosi's trial testimony.

### C. Attorney Conflict of Interest

Finally (and relatedly), McKinney argues that she is entitled to a new trial because one of her attorneys, Anthony Pinelli, had a conflict of interest involving Witness Janet Odeshoo. Pl.'s Br. at 24. Odeshoo was the Deputy Regional Administrator of FEMA's Region V at the time of McKinney's termination. (Remember, that is the region where McKinney worked.) Pl.'s Trial Exh. 84, Odeshoo Dep. at 6:9-10. She was also Skarosi's immediate supervisor. *Id.* at 7:9-21. McKinney asserts that because of Pinelli's close family relationship with Odeshoo—Pinelli's wife and son know Odeshoo's daughter—Pinelli failed to impeach Skarosi

and to point out the inconsistencies between Skarosi's trial testimony and his previous statements. Pl.'s New Trial Mot. at 24-25.

"To obtain a new trial on attorney misconduct grounds, the [moving party] must show both that misconduct occurred and that it prejudiced their case." *Waldon v. City of Chicago*, 846 F. Supp. 2d 963, 976 (N.D. Ill. 2012) (quoting *Whiting v. Westray*, 294 F.3d 943, 944 (7th Cir. 2002)). McKinney cannot make this showing. Putting aside whether a conflict of interest even exists here, McKinney has not shown that she was prejudiced by this alleged conflict to such an extent that a new trial is warranted. McKinney argues that Pinelli's relationship with Odeshoo adversely affected her case because it prevented Pinelli from properly attacking Skarosi's trial testimony. But as discussed above, Skarosi's trial testimony was not inconsistent with his prior statements. So, there were no prior statements for Pinelli to use for impeachment purposes. And, even if there were, and even if Pinelli had performed inadequately, the appropriate remedy here would again be an action against Pinelli for malpractice, not a new trial. *Deppe v. Trippe*, 863 F.2d 1356, 1365 (7th Cir. 1988) ("[W]here privately retained counsel performs inadequately (and this would include continuing to represent two or more parties notwithstanding a conflict of interest), the proper remedy is not a new trial, but rather an action against the attorney for malpractice.").

It is crucial too that McKinney was fully aware of Pinelli's potential conflict of interest well before trial. The morning after the trial ended, while jury deliberations were still ongoing, McKinney emailed Pinelli asking him whether the

Court and defense counsel were aware of his conflict of interest. R. 207-1, Exh. H. In that email, McKinney clarifies: "I am talking about the conflict of interest with Janet Odeshoo that you expressed *before* you took my case." R. 207-1, Exh. H at 6 (emphasis added). As proven by this email, Pinelli disclosed his potential conflict of interest to McKinney right from the beginning. McKinney agreed to retain him anyways. Under these circumstances, McKinney has failed to show that Pinelli's alleged conflict of interest resulted in a miscarriage of justice sufficient to warrant the grant of a new trial.

### III. Conclusion

For the reasons discussed above, McKinney's motion for a new trial is denied.


ENTERED:


      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 21, 2016